**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION
CASE NO.: _____**

|  |  |  |
|---|---|---|
| Melanie Moore | ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT**<br>(Employment) |
| -v- | ) ) | |
| Staffmark, a subsidiary business of<br>Recruit Holdings Company, Ltd. | ) ) ) ) | |
| Defendants. | ) ) | (Jury Trial Demanded) |

**COMES NOW THE PLAINTIFF**, by and through her undersigned attorney, and respectfully alleges unto this Honorable Court as follows:

## I. NATURE OF THE ACTION

1. This claim is brought by Plaintiff to challenge the existence of sexual harassment and discrimination, committed against the Plaintiff, Melanie Moore by Staffmark, a subsidiary business of Recruit Holdings Company, Ltd. ( hereinafter "Staffmark"). The violations suffered by the Plaintiff occurred at the Koyo Corporation plant in Orangeburg, SC, where Ms. Moore was placed by the staffing agency.

2. The Defendant Staffmark's unlawful actions, policies and practices have had the effect of allowing Plaintiff to be sexually harassed, discriminated against and of creating a hostile and discriminatory environment all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et.seq.

3.  The Plaintiff, Melanie Moore, is a female who is as such, the member of a protected

    class.  The employer, Staffmark, qualifies as an employer under the above-referenced

    statute.

## II.    JURISDICTION AND VENUE

4.  Plaintiff, Melanie Moore is a citizen and resident of Orangeburg County County, State of

    South Carolina.

5.  The Defendant, Staffmark, is subsidiary business of Recruit Holdings Company, Ltd. and

    has several locations in the State of South Carolina, including 1941 Saint Matthews Rd.,

    Orangeburg, SC, in Orangeburg County, State of South Carolina.  Staffmark provides

    staffing services to businesses within the State, including in Orangeburg, SC.

6.  Plaintiff at all times relevant herein was employed by the Defendant Staffmark, and

    assigned to work in Orangeburg, SC.

7.  That venue is proper in this Court as the events giving rise to this cause of action

    occurred in Orangeburg County.

8.  Jurisdiction is proper over these claims as there is a question of federal law, pursuant to

    28 USC 1331.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.  Plaintiff, Melanie Moore, made on at least 2 occasions complaints to, Staffmark and

    timely filed an allegation of discrimination, and hostile work environment, alleging that

    she had been the victim of sexual harassment at the plant where she was assigned. She

    also informed Staffmark that she had been retaliated against for engaging in protected

    activity.

10. Plaintiff subsequently filed her complaint with the EEOC and SCHAC and received a "right to sue letter",  and now commences this action and submits that she has satisfied all private, administrative and judicial pre-requisites to the institution of this action.

## IV.   PARTIES

11. The Defendant Staffmark is subsidiary business of Recruit Holdings Company, Ltd. is headquartered in Cincinnati, Ohio, it has over 300 branches and locations throughout the United States and provides job opportunities and payroll for over 40,000 employees each week.

12.  The Defendant Staffmark maintains offices and facilities in the United States and in South Carolina including those at 1941 Saint Matthews Road, Orangeburg, SC 29115.

13. Defendant, Staffmark  is subject to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et.seq and the laws of the State of South Carolina.

14. The Defendant employer has over 15 employees, and as such has over the jurisdictional limit for employees required by the applicable and relevant federal statutes.

15. At all relevant times Defendant has continually done business in the State of South Carolina and in the County of Orangeburg.

16. The plaintiff Melanie Moore at all times herein after mentioned was and still is a resident of South Carolina, County of Orangeburg.

## V.  STATEMENT OF FACTS

17. That the allegations of paragraphs 1 through 16 above are realleged as if fully set forth herein verbatim.

18. Plaintiff went to Staffmart to obtain employment placement services.

19. Plaintiff was assigned to the JTEKT/Koyo plant in Orangeburg, as a temporary worker to the position of Packer.

20. Plaintiff was employed by Staffmark and assigned to work at the Koyo Plant in from August 21, 2014 through January 28, 2015 as a temporary worker.

21. Plaintiff earned $11.00 per hour as a temp.

22. During the relevant time period, Plaintiff's supervisor was Mr. Bryant, who, when Plaintiff was assigned to him, indicated that he was excited to have "fresh meat" on his shift.

23. Bryant over time began a campaign of sexual harassment against Ms. Moore. He was disrespectful to her, her commented on his thoughts about Ms. Moore's body parts and her figure, he stopped calling her by her name and called her *Beauty* instead.

24. Plaintiff's supervisor would sneak up behind her, tell her he is watching her, discipline male coworkers when they attempted to speak to her, arranges to have her on his overtime and weekend shift.

25. Bryant made repeated comments on how good Plaintiff's bottom looked in her jeans, made sexual comments about her walk and her figure.

26. Bryant told Plaintiff that she smelled good and wanted to know if she tasted like she smelled. He also indicated that he could see them together in a sexual manner.

27. Bryant advised Ms Moore that she needed to tell her husband that he (Bryant) "owns her" and advised Plaintiff that he controls her over-time income and that she needs to tell her

husband that. He advises Plaintiff that any weekend he worked overtime she would be expected to work.

28. Bryant advised Plaintiff that he was always watching her. He remained so close that on occasion she would step backward and find him behind her, close enough to trip over.

29. Ms. Moore tried to ignore the conduct, but it continued. As a result Plaintiff wore baggy clothes and tried to avoid Mr. Bryant. In addition Plaintiff told Mr. Bryant to stop and that she does not like his behavior. Plaintiff also advised Mr. Bryant that she cannot tell her husband she "belongs to another man".

30. Plaintiff did not want to work overtime with Bryant but she was advised that if she refused to work overtime with him he would call Staffmark and get another temp.

31. When Plaintiff worked with Bryant on the weekends he said he liked it because he could make her work closer to him and could smell her. Ms. Moore did not want to work overtime and knew there were other women who wanted and needed to work. Nevertheless, Bryant took other female temps overtime and assigned it to Ms. Moore.

32. Ms. Moore continued to rebuff Bryant's advances but he indicated that he was the boss and could have her fired.

33. Ms. Moore was afraid of losing her job and became emotionally upset. She also began having breathing problems, as well as severe skin problems. However, Moore became more insistent about rebuffing Bryant's comments during this time.

34. Ms. Moore advised Mr. Bryant about her breathing issues, and provided a Doctor's note. As a result Bryant assigned her to an area that had no ventilation. Ms. Moore asked for a

fan because her diagnosed asthma was becoming worse.  She also asked to be moved back to where she was working before. Mr. Bryant declined and ignored her. When another employee supplied her with a fan –Bryant indicated that the employee had to take it away forcing her to struggle to breath and to rely on her inhaler.

35. Mr. Bryant advised Plaintiff that another employee reported his sexual harassment to HR. Specifically the employee reported unwanted touching, sexual remarks and buying her items of clothing and trying to make her allow him to put them on her. Mr. Bryant advised Plaintiff that as a result of the other temp's report of his improper behavior the employee was reprimanded. Mr. Bryant advised Ms. Moore that that temps have no rights and that the other employee was humiliated and ordered to apologize by HR and Staffmark, to him for making the report,  if she wanted to keep her job. He also advised that he was not disciplined. Bryant also told this story to other employees in Moore's presence. Bryant indicated that he promised to hire the other female worker permanently but that was just a joke to humiliate her – he had no intention of doing so.  Bryant told Ms. Moore the story so she would understand she was powerless. Ms. Moore confirmed the story with the employee who confirmed that she complained and that she was forced to apologize for making the report if she wanted to keep her job.

36. Ms. Moore made complaints about her treatment to the Koyo/JTEKT employee hotline but was told she was not allowed to use it because she is a temporary worker.

37. Plaintiff advised "Rosina" at Staffmark on two occasions during her employment that she was being sexually harassed and about the working conditions. "Rosina" advised Plaintiff to go to HR at the Koyo Plant.

38. Plaintiff specifically asked Staffmark for assistance and reassignment. Staffmark did nothing to assist the Plaintiff and on information and belief did not investigate or communicate with Koyo.

39. Ms. Moore subsequently made a complaint to Mr. Brown, the HR representative about the failure to accommodate her medical condition and her treatment by Supervisor Bryant.

40. Plaintiff was subsequently advised by coworkers that Mr. Bryant had indicated that because she complained about Mr. Bryant she was going to be terminated

41. Ms. Moore tendered her resignation before she was terminated.

42. Plaintiff has experienced extreme emotional trauma, depression and distress as a result of the sexual harassment and hostile environment.

## FOR A FIRST CAUSE OF ACTION

### (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.)

43. Any and all allegations of paragraphs one through 90 of this Complaint are incorporated here as if fully repeated herein.

44. The actions of Bryant set forth above constitute objectionable and sexual   harassing behavior in violation of Title VII.

45. The actions and work atmosphere described above constitute a hostile environment under Title VII as a reasonable person would find the circumstances to be intolerable.

46. Staffmark qualified as an employer or joint employer of the Plaintiff.

47. Staffmark exercised significant control over Plaintiff such that it qualified as an employer for the purpose of Title VII.

48. Plaintiff notified the employer of sexual harassment and hostile environment as required by the Defendant Employer's policies.

49. Plaintiff properly notified the Defendant Staffmark of the conduct in an attempt to halt the offensive behavior.

50. Plaintiff timely filed a charge of discrimination against the Defendant Employer with the EEOC (as dual agent), alleging that she had been discriminated against, harassed, and retaliated against for engaging in protected activity under federal statute, state law and in violation of employer policy.

51. Plaintiff further alleged retaliation, sexual discrimination and harassment and the existence of a hostile, offensive and intimidating work environment, as well as discriminatory terms and conditions of employment.

52. The conduct as alleged herein violates Title VII of the Civil Rights Act of 1964,   as amended, 42 U.S.C. §2000e, *et seq.* as Defendant has, among other things, permitted the Plaintiff to be retaliated against, sexually harassed, subjected to unwanted advances, discriminated against based on sex, and subjected to a sexually hostile work environment.

53. Defendant's acts and omissions alleged herein constitute discrimination against the female Plaintiff with respect to the terms, conditions and/or privileges of employment because of her sex, in  violation of 42 U.S.C. §§2000e, *et seq.*

54. Plaintiff engaged in protected activity by "opposing" practices forbidden by Title VII, and specifically voiced her "opposition" to inappropriate sexual advances, menacing and intimidating actions all made unlawful by Title VII.

55. Although Defendant Employer has an articulated and published sexual discrimination policy the Defendant failed, upon information and belief, to follow the policy, to

investigate Plaintiff's allegations properly, and to take any effective action to ensure that harassment did not continue.

56. Although Defendant Employer has an articulated and published sexual discrimination policy the Defendant failed, upon information and belief, to follow the policy.

57. Defendant Employer's actions, are in violation of 42 U.S.C. §§2000e, *et seq.*

58. That as a result of the Defendant's actions Plaintiff has suffered physical and mental distress, loss of income and benefits, has incurred costs and attorneys fees and suffered other actual and punitive damages.

59. Wherefore Plaintiff seeks and award of actual and punitive damages, costs and attorneys fees in such amounts as are just and proper.

**WHEREFORE**, the Plaintiff demands judgment:

1)    For all actual and consequential damages that she has suffered;

2)    For loss of income and other actual, punitive, and consequential damages against the Defendant, in amounts that is just and fair as determined by the triers of fact;

3)    for attorneys fees and the costs of bringing this action; and for further relief as may be just and proper upon each of the causes of action set forth above.

For such other and further relief as this Court may deem just and proper.

FURTHER, THE PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully Submitted,

S/ Jennifer Munter Stark
Jennifer Munter Stark, Esq. FID 6364
Jennifer Munter Stark, Esquire, LLC
210 Wingo Way Suite 300
Mt. Pleasant, SC 29464
(843) 972-0004; (843) 972-0006 (f)
jmunterstarklaw@gmail.com
ATTORNEY FOR PLAINTIFF

August 18, 2016

Mt. Pleasant SC